FILED
CLERK, U.S. DISTRICT COURT

APR 17 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TERI DEAN o/b/o STEVEN R. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>Defendant. | No. CV 07-3250-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Teri Dean ("plaintiff"), on behalf of her minor son Steven R. Smith ("Steven"), filed this action on June 6, 2007, seeking review of the Commissioner's denial of Steven's application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 25, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 13, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

On May 4, 2004, Teri Dean protectively filed an application for her minor son, Steven R. Smith, seeking Supplemental Security Income payments, alleging that Steven had been disabled since August 1, 2003, due to depression, sleep disorder, attention-deficit hyperactivity disorder ("ADHD"), language and speech problems, and learning disability. [Administrative Record ("AR") at 14, 47-62, 69.] After the application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 27-28, 30, 32-36, 40-44.] A hearing was held on July 26, 2006, at which time both plaintiff and Steven appeared and testified without counsel. [AR at 195-211.]

In a decision dated August 9, 2006, the ALJ found that Steven "has not been disabled within the meaning of the Social Security Act since May 4, 2004, the date the application was filed." [AR at 14-21.] Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. [AR at 7.] On March 22, 2007, the Appeals Council denied plaintiff's request for review and advised plaintiff that the ALJ's decision would stand as the final decision of the Commissioner in Steven's case. [AR at 4-6.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATING DISABILITY IN A CHILD

Disability for children is determined in a somewhat different manner than disability for adults. For a child to be disabled for the purpose of receiving benefits, he must suffer from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which could be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000). An impairment causes "marked and severe functional limitations" if it meets or equals an impairment described in the Listing of Impairments. See 20 C.F.R § 416.924(d); see also Merrill, 224 F.3d at 1085. "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).

A.   THE THREE-STEP SEQUENTIAL EVALUATION PROCESS

The regulations promulgated by the Social Security Administration establish a three-step sequential evaluation process to be followed in a child disability case. See 20 C.F.R. § 416.924. First, it must be determined whether the child claimant is involved in substantial gainful activity. If so, there is no disability, and the claim is denied. See 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity (and most children are not), then it is determined whether the child claimant has a severe medically determinable impairment or combination of impairments. If not, there is no disability and the claim is denied. See 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, then in the third and final step, it must be determined whether the impairment meets or medically or functionally equals in severity an impairment in the Listing of

Impairments found at 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listing"). If the impairment meets or equals an impairment in the Listing, then it is presumed to cause "marked and severe functional limitations." Assuming that the 12-month duration period is also established, benefits are awarded. See 20 C.F.R. § 416.924(d). See Smith v. Massanari, 139 F.Supp.2d 1128, 1132 (C.D. Cal. 2001).

Medical equivalence exists if the impairments are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). In other words, "[t]o equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment . . . ." Smith, 139 F.Supp.2d at 1135 (internal quotations and citations omitted).

In order for a severe impairment or combination of impairments to functionally equal the Listing, it must result in "marked" limitations in two "domains" of functioning, or an "extreme" limitation in one such domain. See 20 C.F.R. § 416.926a(a).[1] A "marked" limitation is one where the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is a limitation that is "'more than moderate'" but "'less than extreme.'" Id. An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). It is the rating given to "the worst limitations." Id.

B. THE ALJ'S APPLICATION OF THE THREE-STEP PROCESS

In this case, at step one, the ALJ found that Steven had "not engaged in substantial gainful activity at any time relevant to [the] decision." [AR at 17.] At step two, the ALJ concluded that Steven has the "severe" impairment of ADHD. [AR at 17-21.] At step three, the ALJ determined

---

[1] The six domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(g)-(l). For each domain, various criteria are listed to determine the extent of a child's limitations caused by the impairment.

that Steven's impairment does not meet, or medically or functionally equal, any of the impairments in the Listing. [AR at 17.] Accordingly, the ALJ determined that Steven is not disabled. [AR at 21.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the consultative examiner's opinion of Steven's mental status; (2) properly consider the opinion of Steven's treating physician; (3) properly develop the record; and (4) properly consider the third-party written witness testimony of Steven's mother. Joint Stipulation ("Joint Stip.") at 2-3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**THE ALJ'S DUTY TO DEVELOP THE RECORD**

Although the plaintiff bears the burden of proving disability, the ALJ in a Social Security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id. When a plaintiff "is not represented by counsel, the administrative law judge's duty is 'to scrupulously and conscientiously probe into, inquire of and explore for all relevant facts[,]' and he must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

The ALJ's responsibility derives in part from the basic premise that disability hearings are not adversarial in nature. See Sims v. Apfel, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into the issues." 20 C.F.R. §§ 404.944, 416.1444; see also Pearson v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989) (recognizing ALJ's "duty of 'full inquiry' under 20 C.F.R. § 416.1444"). As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence are addressed so that the disability

determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); see also Cox, 587 F.2d at 991.

On the other hand, the ALJ is not obliged to undertake the independent exploration of every conceivable condition or impairment a claimant might suffer. An ALJ does not fail in his duty to develop the record by not seeking evidence regarding a physical or mental impairment if no medical evidence indicates that such an impairment exists. See Breen v. Callahan, 1998 WL 272998 at *3 (N.D. Cal. May 22, 1998) (noting that, in the Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision").

In the decision, the ALJ appears to rely on certain findings and opinions of Steven's treating physician, Dr. Richard Ferman, but "does not give any weight to the GAF assessment from Dr. Ferman." [AR at 20.] The ALJ rejected the Global Assessment of Functioning ("GAF") score of 40[2] assessed by Dr. Ferman, because it was "not consistent with the findings from the mental status examination reported by Dr. Ferman" or Dr. Ferman's findings regarding Steven's current level of functioning, and it was inconsistent with the "Teacher Questionnaire." [AR at 20.] The ALJ also rejected the opinion of the psychological consultative examiner, Roberta H. Japka -- specifically, the IQ scores assessed by Dr. Japka -- because the opinion was internally inconsistent, and was inconsistent with portions of Dr. Ferman's evaluation and the "Teacher Questionnaire." [AR at 18-20.] Instead, the ALJ gave weight to the assessment of the State Agency reviewing psychiatrist, Dr. Harvey Biala, "because it is consistent with the medical and school records, particularly the teacher questionnaire and the findings from the mental status examinations by the consultative

---

[2] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score in the range of 31 to 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

examiner and Dr. Ferman." [AR at 20.] Plaintiff asserts that the ALJ failed to properly develop the record. Joint Stip. at 14-16. As discussed below, the Court agrees with plaintiff.

Here, the ALJ failed to discharge his special duty to fully develop the record, especially in light of the fact that Steven was not represented by counsel. See Cox, 587 F.2d at 991 (when a claimant does not have counsel, the ALJ has a special duty to inquire into and explore all relevant facts). Any internal inconsistencies and ambiguities in the reports of Dr. Ferman[3] and Dr. Japka[4] should have triggered the ALJ's duty to seek further development of the record before adopting or rejecting any portion of those reports.[5] See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

---

[3] While a GAF score may not have a "direct correlation" to the Social Security severity requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Ferman's assessment of a GAF score of 40 and its implications may be ignored. Moreover, the ALJ's statement that he gave the GAF score assigned by Dr. Ferman no weight because the GAF score of 40 was at odds with the other findings in Dr. Ferman's report -- i.e., the normal mental status examination and the functional level -- was based on the ALJ's selective reliance on the portion of Dr. Ferman's report that was favorable to his determination of nondisability. [AR at 20.] This is improper. The ALJ cannot pick and choose from the evidence in order to support his conclusions. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)).

[4] Steven's "overall score" on the Wechsler Intelligence Scale for Children examination, administered by Dr. Japka, "places him within the mildly mentally retarded range when compared to others of his own age." [AR at 176.] See Listing 112.05D (the required level of severity for the Listing for mental retardation is met if the claimant can establish "[a] valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant limitation of function"). Dr. Japka diagnosed Steven with attention-deficit disorder with hyperactivity, sleep disorder due to medication and/or simple fears, mild mental retardation by testing, and reading disorder (possible dyslexia). [AR at 178.] However, Dr. Japka assessed Steven with a GAF score of 70 [AR at 178], which indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34. The ALJ acknowledged the IQ scores in the 60s found by Dr. Japka, but did "not find the IQ scores, which indicate mild mental retardation, [] valid because they are not consistent with the medical and school records," Dr. Japka's GAF assessment of 70, Dr. Ferman's mental status report or the "Teacher Questionnaire." [AR at 19-20.]

[5] The ALJ's failure to fully develop the record with respect to the ambiguities and internal inconsistencies in the reports of Dr. Ferman and Dr. Japka, and his selective reliance on specific

1  Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow
2  for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'")
3  (quoting Smolen, 80 F.3d at 1288). If evidence from the medical source is inadequate to
4  determine if the claimant is disabled, an ALJ is required to recontact the medical source to
5  determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1),
6  416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when
7  the report from your medical source contains a conflict or ambiguity that must be resolved, the
8  report does not contain all the necessary information, or does not appear to be based on medically
9  acceptable clinical and laboratory diagnostic techniques."). As a general rule, the record will be
10 considered "inadequate" or "ambiguous" when a medical source has provided a medical opinion
11 that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.
12 2005) ("An ALJ is required to recontact a doctor if the doctor's report is ambiguous or insufficient
13 for the ALJ to make a disability determination.") (citation omitted); Thomas v. Barnhart, 278 F.3d
14 947, 958 (9th Cir. 2002). The responsibility to see that this duty is fulfilled belongs entirely to the
15 ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).
16 Here, the record was not sufficiently developed to permit the ALJ to reach the conclusion that

---

portions of those reports was improper. Moreover, the ALJ's reliance on the "Teacher Questionnaire" dated February 28, 2005 -- completed by Steven's 5th grade teacher -- to reject Dr. Ferman's GAF score of 40 and Dr. Japka's IQ scores indicating mild mental retardation is misplaced and does not relieve the ALJ of his duty to fully develop the record. The ALJ concluded that Steven "has less-than-marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others and caring for himself; and no limitation in the domain of moving about and manipulating objects and health and physical well-being." [AR at 20.] However, in the "Teacher Questionnaire," under the acquiring and using information domain, Steven is noted as having a "serious problem" in the areas of "[r]eading and comprehending written material" and "[e]xpressing ideas in written form." [AR at 108.] Steven is also noted as having problems functioning in the attending and completing tasks domain, specifically, a "serious problem" is noted in the area of "[f]ocusing long enough to finish assigned activity or task." [AR at 109.] The ALJ's assertions that Dr. Ferman's GAF assessment and Dr. Japka's IQ scores are "not consistent" with the "Teacher Questionnaire" are not wholly accurate, as some of the ratings in the "Teacher Questionnaire" tend to lend support to the GAF score of 40 assessed by Dr. Ferman [AR at 172], and the full scale IQ score of 68 and performance score of 64 found by Dr. Japka. [AR at 176.]

Steven "does not have an impairment or combination of impairments that results in either 'marked' limitation in two domains of functioning or 'extreme' limitation in one domain of functioning" to the extent the records of Dr. Ferman and Dr. Japka were internally inconsistent and/or ambiguous. For instance, in light of the ALJ's expressed skepticism toward the opinions of Dr. Ferman and Dr. Japka as being internally inconsistent, it would have required little effort on his part to recontact these physicians to determine the basis of their opinions. The ALJ should recontact these physicians on remand in order to resolve any inconsistencies and inadequacies and fully develop the record. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to fully develop the record.[6] The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: April 16, 2008

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6] As the ALJ's further development of the record on remand may impact on the other issues raised in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order. Rather, upon remand, the ALJ should re-examine the opinions of the treating and examining physicians, as well as the lay witness testimony.